UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ONE JOURNAL SQUARE PARTNERS URBAN RENEWAL COMPANY LLC, ONE JOURNAL SQUARE TOWER NORTH URBAN RENEWAL COMPANY LLC, and ONE JOURNAL SQUARE TOWER SOUTH URBAN RENEWAL COMPANY LLC, | Civil Action No 2:18-cv-11148 (JMV)(MF) |
| Plaintiffs, | Document Filed Electronically |
| v. | |
| JERSEY CITY DEVELOPMENT AGENCY, CITY OF JERSEY CITY, and STEVEN FULOP, | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANT STEVEN FULOP**

---

WHIPPLE AZZARELLO, LLC
John A. Azzarello, Esq. (JA 4363)
161 Madison Avenue, Suite 325
Morristown, New Jersey 07960
Telephone: 973-267-7300
azzarello@whippleazzarellolaw.com
Attorneys for Defendant Steven Fulop

On the Brief:

    John A. Azzarello

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

LEGAL ANALYSIS ......................................................................................................... 5

    I.     Standard of Review For Motion to Dismiss ........................................................ 5

    II.    Plaintiffs Lack Standing to Bring the Federal Claims ........................................ 6

    III.   Qualified Immunity Bars the Claims Against Mayor Fulop ............................... 6

        a.   The Doctrine of Qualified Immunity Shields Mayor Fulop from Liability for Discretionary Acts ............................................................................. 6

        b.   Plaintiffs Do Not Have a Legally Protected Property Interest Under the 14th Amendment ............................................................................................... 9

    IV.   Plaintiffs Due Process Claims Fail as a Matter of Law ................................... 10

        a.   Plaintiffs' Alleged Facts Do Not State a Procedural Due Process Claim ...... 10

        b.   Plaintiffs' Alleged Facts Do Not State a Substantive Due Process Claim .... 12

    V.    Plaintiffs' Equal Protection and First Amendment Claims Must be Dismissed .. 14

    VI.   Plaintiffs' Breach of Contract Claims Must be Dismissed ................................. 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

CASES

*Amato v. Wilentz*, 952 F.2d 742 (3d Cir. 1991) ..................................................................6

*Anderson v. Creighton*, 486 U.S. 635 (1987) ......................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................5

*Bell Atlantic v. Twombly*, 750 U.S. 544 (2007) ..................................................................5

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ................................................................10

*Candeliere v. U.S.A.*, 816 F.Supp. 94 (D.N.J. 1992) ....................................................15-16

*Chainey v. Street*, 523 F3d. 200 (3d Cir. 2008) ............................................................12-13

*Clark v. Jeter*, 486 U.S. 456 (1988) ..................................................................................15

*City Concrete Corp. v. Town of Roxbury*, 442 F.3d. 159 (3d Cir. 2006) ..........................12

*Donovan v. Bachstadt*, 91 N.J. 434 (1982) .......................................................................15

*Eichenlaub w. Twp. of Indiana*, 385 F. 3d 274 (3d Cir. 2000) ..........................................13

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ......................................5, 8, 13

*Gomez v. Toledo*, 446 U.S. 635 (1980) ...............................................................................9

*Grant v. City of Pittsburgh*, 98 F.3d 116 (3d Cir. 1996) .....................................................7

*Gruenke v. Seip*, 225 F.3d 290 (3d Cir. 2000) .................................................................7-8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .....................................................................6-7

*Hill v. Burough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ..............................................10

*Lauren W. ex. rel. Jean W. v. DeFlammis*, 480 F.3d 259 (3d Cir. 2007) ..........................15

*Liebler v. City of Hoboken*, 2016 U.S. Dist. LEXIS 95641 (D.N.J. July 21, 2016) ............8

*Linan-Faye Const. Co. v. Housing Auth.*, 797 F. Supp. 376 (D.N.J. 1992) .......................11

*Locust Valley Golf Club v. Upper Saucon Twp.*, 391 F. App'x 195 (3d Cir. 2010) ..........14

*Lorenzo v. Seeley*, 2008 U.S. Dist. LEXIS 28318 (D.N.J. Apr. 7, 2008) ..........................14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .........................................................6

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 1004) ......................................................3

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) .......................................10

*McGreevy v. Stroup,* 413 F.3d 359 (3d Cir. 2005) ................................................................7

*Montiero v. City of Elizabeth,* 436 F.3d. 397 (3d Cir. 2006) ................................................7

*Nicholas v. Penn. State Univ.,* (227 F.3d 133 (3d Cir. 2000) ..............................................12

*Pickett v. Lloyd's,* 131 N.J. 457 (1993) ...............................................................................15

*Pearson v. Callahan,* 555 U.S. 223 (2009) ...........................................................................7

*Pence v. Twp. Committee of Bernards Twp.,* 2010 U.S. Dist. LEXIS 73538 (D.N.J. July 21, 2010) .....................................................................................................................................10

*Phillips v. County of Alleghany,* 515 F.3d 744 (3d Cir. 2005) .............................................5

*S&D Maintenance Co., Inc. v. Goldin,* 844 F.2d 962 (2d Cir. 1988) ............................10, 11

*Saucier v. Katz,* 533 U.S. 194 (2001) ...................................................................................7

*Secretary of State of MD v. Joseph H. Munson Co., Inc.,* 467 U.S.947 (1984) ....................6

*Shamrock Creek v. Borough of Paramus et al.,* 2014 U.S. Dist. LEXIS 134935 (D.N.J. Sep. 24, 2014) .....................................................................................................................................13

*Startzell v. City of Philadelphia,* 533 F.3d. 182 (3d Cir. 2008) ..........................................14

*Strategic Envtl. Partners, LLC v. Bucco,* 184 F. Supp. 3d 108 (D.N.J. 2016) ...............12,13

*Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131 (3d Cir. 2009) ..................................67

*Unger v. National Residents Matching Program,* 928 F.2d 1392 (3d Cir. 1991) ..........10-11

*United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA* 316 F. 3d 392 (3d Cir. 2003)..12-13

*Village of Willowbrook v. Olech,* 528 U.S. 652 (2000) ......................................................14

*Wilson v. Layne,* 526 U.S. 603 (1999) ..................................................................................8

## **PRELIMINARY STATEMENT**

Plaintiffs' Complaint is a blatant attempt to distort a breach-of-contract action into a Section 1983 claim, in contravention of well-settled federal law and despite their lack of standing to assert the federal claims. Even a cursory review of Plaintiffs' Complaint reveals they have no recognized protected property interest, there were no violations of Plaintiffs' Constitutional rights, and this breach of contract case belongs in state court. Moreover, because Plaintiffs' complaints against the Mayor of Jersey City concern his exercise of discretion regarding tax abatements and other financial incentives for Plaintiffs' development project, qualified immunity bars Plaintiffs' claims against him.

Defendant Steven Fulop, Mayor of Jersey City ("Mayor Fulop"), therefore submits this motion to dismiss the federal §§1983 and 1988 claims brought by Plaintiffs One Journal Square Partners Urban Renewal Company LLC, One Journal Square Tower North Urban Renewal Company LLC, and One Journal Square Tower South Urban Renewal Company LLC ("Plaintiffs") in an overreaching attempt to gain federal jurisdiction over a simple breach of contract action. Mayor Fulop moves to dismiss the claims against him on the grounds that Plaintiffs lack standing to bring the instant claims, and that Mayor Fulop is entitled to qualified immunity for the acts alleged in the Plaintiffs' Complaint. Mayor Fulop also moves to dismiss Counts Five through Nine (the "Federal Claims") of the Complaint and Jury Demand for their failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Finally, Mayor Fulop moves to dismiss counts One through Four (the "Contract Claims") because he is not a party to the contract in question.

Distilled to its essence, the crux of Plaintiffs' argument is that the Redevelopment Agreement they entered into with the Jersey City Redevelopment Agency ("JCRA") required the

1

City of Jersey City (the "City") to approve whatever tax abatements and subsidies Plaintiffs desired with respect to the redevelopment plans. When their demands were not met, and when they flouted the deadlines and commitments of their agreement with impunity, the Redevelopment Agreement was terminated pursuant to its terms. Rather than bring a simple breach of contract case against the contracting agency, Plaintiffs attempt to place this case in federal court by inventing a farcical tale of political intrigue that not only stretches the bounds of imagination, but the bounds of law. The Federal Claims are overreaching, unwarranted, and unsupportable under any reading of applicable federal law. The Contract Claims against Mayor Fulop are also unsupportable under black letter law. They must be dismissed.

In addition to the arguments set forth herein, Mayor Fulop relies upon, and incorporates herein as relevant, the arguments set forth by defendants JCRA and the City, in support of their separate motions to dismiss.

## FACTUAL BACKGROUND

The following allegations are taken from the Complaint (Doc. 1).

### Background

Plaintiffs (alternatively referred to as "JSP") are New Jersey limited liability companies all with their principal place of business at 100 Challenger Road, Suite 401, Ridgefield Park (Bergen County), New Jersey. Complaint ¶¶3-5. In or about April, 2015, Plaintiffs entered into the Redevelopment Agreement with defendant Jersey City Redevelopment Agency (Exhibit 1 to the Complaint, the "Redevelopment Agreement"). Complaint ¶ 27. Mayor Fulop is neither a party nor signatory to the Redevelopment Agreement. Complaint Exhibit A. Plaintiffs allege that "at the time that Defendants consented to the assignment of the Project to JSP, and designated JSP as

2

the Project redeveloper... Jared Kushner was the CEO of the Kushner Companies, which possessed an ownership interest in JSP." Complaint ¶26.

The Redevelopment Agreement includes an "Entire Agreement" provision at § 16.10 whereby the written agreement "supersedes the prior or contemporaneous writings, discussions, or agreements between the parties with respect to the subject matter hereof and may not be modified, or amended except by a written agreement specifically referring to this Agreement signed by all parties hereto." Complaint, Exhibit A, at pp. 54-55.[1] Despite this clear provision, Plaintiffs allege various extraneous agreements between Plaintiffs and the Redevelopment Agency: that defendants would "cooperate and assist JSP in obtaining" *inter alia,* "required Government Approvals," "financing," and "similar non-governmental financing needed for the Project, including tax abatements from the City." Complaint ¶ 25(a)-(e). Plaintiffs further allege that "the parties recognized during negotiations the critical need for flexibility to adjust the projected timelines under the Redevelopment Agreement, including the deadlines for: (i) obtaining the requisite Government Approvals for the Project; (ii) financing the Project; and (iii) commencement and completion of construction of the Project." Complaint ¶ 29.

Plaintiffs eventually received both Jersey City and Hudson County Planning Board Approvals for their site plans on November 14, 2017 and February 20, 2018 respectively. Complaint ¶ 50. The Complaint alleges various other "substantial activities [undertaken by JSP] to perform its obligations under the Redevelopment Agreement" including "obtaining title to lands," "making an application" for grants and tax credits, "performing under the $2.5 million

---

[1] The Redevelopment Agreement, included as an Exhibit to Plaintiffs' Complaint and central to their causes of action, may properly be consulted and analyzed in a 12(b)6 motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217 221 n.3 (3d Cir. 2004), *cert. denied sub nom. Hing Quan Lum v. Bank of Am.*, 543 U.S. 918 (2004)

3

Pledge Agreement," "engaging in discussions with governmental entities…regarding issues," and "retaining professionals and consultants," to the tune of an alleged $55 million in expenditures. Complaint ¶ 51.

With respect to the deadlines set forth in the Redevelopment Agreement (specifically those set forth in Schedule C-1 at Complaint Exhibit A), including the deadline of January 1, 2017 for construction commencement, Plaintiffs allege "all parties understood and agreed that the date was not operative" due to contingencies. Complaint ¶ 56. Plaintiffs also allege that the City and the Redevelopment Agency were "obligated" to "cooperate" with Plaintiffs in "obtaining approvals for tax abatement" and redevelopment bonds. Complaint ¶ 58. Plaintiffs allege that throughout 2017, Plaintiffs and the City discussed "what tax abatements the City would grant." Plaintiffs further allege that following press coverage relating to Jared Kushner's sister's involvement with the project, Mayor Fulop commented that the City "administration made clear to the applicant that the City is not supportive of their request" related to tax subsidy and abatement. Complaint ¶ 63. Plaintiffs complain that Mayor Fulop's comment constituted a "repudiation of the contractual promises in the Redevelopment Agreement obligating the City and the JCRA to cooperate with JSP in obtaining tax abatements." Complaint ¶ 64.

No agreement on tax abatements having been reached, JCRA served a Notice of Default on Plaintiffs on or about April 17, 2018, and this litigation commenced shortly thereafter. Complaint ¶ 89, Exhibit C.

<u>Allegations Against Mayor Fulop</u>

Plaintiffs' allege they have a "protected constitutional interest in and to the contractual rights" set forth in the Redevelopment Agreement. Complaint ¶ 134. They allege that Mayor Fulop "with malice and intent, began encouraging his appointees to the JCRA to issue the Notice

4

of Default as a pretext for his motive of political animus against the sitting President of the United States, Donald J. Trump, a Republican, and those closely associated with him, including Senior Advisor to the President, Jared Kushner." From these actions, Plaintiffs allege violations of their rights to substantive Due Process (Fifth Count), equal protection (Sixth Count), exercise of free speech (Seventh Count), free association (Eighth Count) and procedural Due Process (Ninth Count).

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW FOR MOTION TO DISMISS.

On a motion to dismiss, a plaintiff's allegations, untested by any finder of fact, must be taken as true, with all reasonable inferences drawn in the light most favorable to the plaintiff. *Phillips v. County of Alleghany*, 515 F.3d 744, 750 (3d Cir. 2005). A complaint will only survive a dismissal motion under Fed. R. Civ. P. 12(b)(6) if it contains "sufficient matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Third Circuit has directed the following two-part analysis to determine whether a complaint's factual allegations can survive a 12(b)(6) motion to dismiss. First, after separating factual allegations from conclusions of law, a "District Court must accept all of the complaint's well-pleaded *facts* as true," but may "disregard any *legal* conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (emphasis added). Then the court determines whether, based on the *facts* alleged in the complaint, the plaintiff has demonstrated a "plausible claim for relief." *Id.*

For the purposes of this motion to dismiss, Plaintiff's repeated assertions of protected "property rights" are legal conclusions that may be disregarded.

5

## II. PLAINTIFFS LACK STANDING TO BRING THE FEDERAL CLAIMS.

Mayor Fulop hereby joins the briefs submitted by JCRA and the City and incorporates the arguments therein as they relate to Plaintiff's lack of standing. The Federal Claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing to assert these claims.

As both the City's and JCRA's briefs thoroughly establish, Plaintiffs fail to show that they have suffered an "injury-in-fact," which is "often determinative" on matters of standing. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). Instead, Plaintiffs impermissibly attempt to assert the rights of a third party, Kushner. Because none of the Plaintiffs suffered an injury and because Kushner is able to bring these claims himself, Count Five (the Substantive Due Process claim), Count Six (the Equal Protection claim) and Count Nine (the Procedural Due Process claim) should be dismissed for lack of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). Furthermore, Plaintiffs First Amendment claims (Counts Seven and Eight) should also be dismissed for lack of standing, as Plaintiffs fail to allege the type of broad chilling effect that might otherwise allow them to bring a First Amendment claim on behalf of a third party. *See e.g. Amato v. Wilentz*, 952 F.2d 742, 749 (3d Cir. 1991), *citing Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 977 (1984)).

## III. QUALIFIED IMMUNITY BARS THE CLAIMS AGAINST MAYOR FULOP.

### A. <u>Qualified Immunity Shields Mayor Fulop from Liability for Discretionary Acts.</u>

Even if Plaintiffs did have standing to bring the Federal Claims, Mayor Fulop is entitled to qualified immunity as explained by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The "reasonable person" standard was further clarified as a query into whether a reasonable public official would know that his or her *specific* conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635 (1987). "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Montiero v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (*quoting Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

The Third Circuit has instructed that "crucial to the resolution of any assertion of qualified immunity is a careful examination . . . [of the] detailed factual description of each individual defendant." *Grant v. City of Pittsburgh*, 98 F.3d. 116, 122 (3d Cir. 1996). Moreover, courts are instructed to resolve the qualified immunity question as early in litigation as possible, to shield immune defendants not only from liability but from the costs and burdens of litigation. *Id.* Indeed, qualified immunity protects government officials "from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

On a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the qualified immunity analysis therefore has two distinct steps, which the Court has discretion to analyze in either order. *Pearson*, 555 U.S. at 226. One, the Court must "determine whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right." *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Two, the Court is called to "determine whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *Id. citing Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir.

7

2000). Here, the Court analyzes whether "in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent." *Id.* at 366 *citing Wilson v. Layne*, 526 U.S. 603, 615 (1999).

This was the process employed by the Honorable Kevin McNulty, U.S.D.J. in *Liebler v. City of Hoboken*, on a 12(b)(6) motion to dismiss the plaintiff's §1983 claims for free speech violations caused by Hoboken officials allegedly precluding plaintiff from speaking at a city council meeting at which he was entitled to speak. There, Judge McNulty denied the motion made on qualified immunity grounds, concluding as follows:

> City officials cannot silence a person speaking at a public meeting because they disapprove this message. That is not necessarily what happened, but it is what plaintiff alleges, and *if* it happened as plaintiff claims, then a *First Amendment* violation would have been apparent to a reasonable official in these Council members' position.

*Liebler v. City of Hoboken*, 2016 U.S. Dist. LEXIS 95641 *14, Civ. No. 15-8182 (D.N.J. July 21, 2016).

In stark contrast, the sole action allegedly undertaken by Mayor Fulop was his failure to support Plaintiffs' requested tax abatements[2]. In essence, Plaintiffs ask this Court to find, as a matter of law, that a Mayor's decision to not reach an agreement with a developer as to tax subsidies and abatements constitutes a violation of a clearly established Constitutional right, and moreover, that any reasonable official would have understood that a failure to reach a tax abatement agreement would violate that Constitutional right. To so find would be to conclude that an official reasonably would have known that he or she was not entitled to make a financial decision with respect to tax subsidies without running afoul of Constitutional law. This is true

---

[2] In support of that factual allegation, Plaintiffs refer to the statutory scheme under N.J.S.A. §40A:20-8, but their conclusions of law with respect thereto are afforded no deference by this Court. *See*, *Fowler*, 578 F.2d at 210-211.

8

even assuming, as the Court must for purposes of this motion, that Mayor Fulop's tax abatement decision was based on the political affiliations of Plaintiff's former CEO. Simply put, there is no Constitutional right to a tax abatement or subsidy. If in process or substance the Redevelopment Agreement imbued the parties with obligations concerning tax abatements, a violation constitutes only a breach of contract.[3]

### B. Plaintiffs Do Not Have a Legally Protected Property Interest Under the 14th Amendment.

Mayor Fulop could not reasonably be expected to know a refusal to grant the requested tax abatements, even if in breach of the Redevelopment Agreement, would violate Plaintiffs' clearly established Constitutional rights, because no such rights exist.

Plaintiffs allege five separate federal claims arising out of Defendants' alleged breach of the Redevelopment Agreement, all in violation of 42 U.S.C. §§1893 and 1988: Substantive Due Process (Fifth Count), Equal Protection (Sixth Count), Exercise of Free Speech (Seventh Count), Free Association (Eighth Count) and procedural Due Process (Ninth Count). All of these claims fail because the Redevelopment Agreement does not grant Plaintiffs a federally protected property interest or other basis on which to assert their federal claims.

There are two pleading requirements for a §1983 action: that some person has deprived the plaintiff of a federal right, and that the person depriving plaintiff of that right was acting under color of law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Plaintiffs' claims fail because they do not allege that they were deprived of a federal right. Rather, they were allegedly deprived of tax abatements and whatever benefit they may have received under the terminated Redevelopment Agreement. Plaintiffs have not alleged that their ownership in the real property was otherwise

---

[3] Mayor Fulop is not a party to the Redevelopment Agreement. *See* discussion at part VI, *infra*.

9

affected. Therefore, all of Plaintiffs' Federal Claims suffer the same fatal defect: they fail to allege a protected federal right of which Plaintiffs were denied.

## IV.     PLAINTIFFS' DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.

### A. <u>Plaintiffs' Alleged Facts Do Not State a Procedural Due Process Claim.</u>

Plaintiff's procedural due process claim must fail because they cannot claim a property interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 (3d Cir. 2006). The Constitution does not create property interests. Rather, they are both created and defined by "existing rule or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). However, federal constitutional law determines whether an interest rises to a "legitimate claim of entitlement" protected by the Fourteenth Amendment. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). Notably, and key to resolution of the instant motion, "[o]nly certain contracts create property rights protected by the Fourteenth Amendment." *Pence v. Mayor & Twp. Comm. of Bernards Twp.*, 2010 U.S. Dist. LEXIS 73538 (Civ. Action. No. 08-2312) (D.N.J. July 21, 2010). As Judge Wolfson explained: "A 'legitimate claim of entitlement' under the Fourteenth Amendment is not so expansive as to include all contracts between individuals and a state. If it were, federal courts would be asked to examine the procedural fairness of every action by a state allegedly in breach of a contract, shifting the 'whole of the public law of the states into the federal courts.'" *Id.* at *9, *quoting S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988).

Indeed, there are only two types of contracts that the Third Circuit has recognized as creating property interests protected under the Fourteenth Amendment: "the first type arises where the contract confers a protected status, such as those 'characterized by a quality of either extreme

10

dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.'" *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991) *quoting S & D Maintenance*, 844 F.2d at 966. The second type of property interest "arises where the contract itself includes a provision that the state entity can terminate the contract only for cause." *Id.*, *citing S & D Maintenance*, 844 F.2d at 967. In the instant complaint, Plaintiffs fail to allege that the Redevelopment Agreement conferred any protected status characterized by "permanence" or "extreme dependence." Moreover, the complaint does not (and cannot) allege that the Redevelopment Agreement could be terminated only for cause, granting Plaintiffs a protected property interest. *See*, Complaint Exh. C, setting forth bases of default pursuant to terms of the Redevelopment Agreement.

Due to this significant limitation on the scope of contracts conferring property interests, courts will dismiss federal claims that are ordinary breach of contract claims masquerading as §1983 actions. *See e.g. Linan-Faye Constr. Co. v. Housing Auth.*, 797 F. Supp. 376, 379 (D.N.J. 1992) ("[a]n interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interest the Supreme Court has thus far viewed as 'property' entitled to procedural[] Due Process protection. . . . we hesitate to extend the doctrine further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor") *quoting S & D Maintenance Co.* 844 F.2d 962; *see also Unger,* 928 F.2d at 1398-99 ("It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim" and it would be "unrealistic and contrary to common sense " to require a Due Process hearing "before any public agency can ever terminate or breach a contract.") (internal quotations omitted).

Because Plaintiffs allege at most a breach of contract, with no identifiable "property"

entitled to procedural Due Process protection, this Court should dispose of Plaintiffs' §1983 claims. Plaintiffs' procedural Due Process claims also fail for the reasons articulated by the City and the JCRA in their moving briefs, incorporated herein by reference.

### B. Plaintiffs' Alleged Facts Do Not State a Substantive Due Process Claim.

"For a substantive Due Process claim challenging the validity of non-legislative state action, a plaintiff must first establish that it has a protected, fundamental property interest." *Strategic Envtl. Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 127 (D.N.J. 2016), *citing Nicholas v. Penn. State Univ.*, 227 F.3d 133, 138-39 (3d Cir. 2000). "Next, a plaintiff must establish that the state action is 'arbitrary, irrational, or tainted by improper motive, or is so egregious that it shocks the conscience.'" *Id. citing Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006). As discussed above, Plaintiffs fail to allege any protected, fundamental property interest. On that basis alone, Plaintiffs' substantive Due Process claim must be dismissed. However, Plaintiffs' substantive Due Process claim is also subject to dismissal because it fails to allege state action on Mayor Fulop's part that would "shock the conscience."[4]

Plaintiffs' Complaint is replete with allegations that Mayor Fulop's actions "shock the conscience." Whether conduct shocks the conscience, however, is a question of law, and the Court owes Plaintiffs' legal conclusion no deference. *See, Fowler*, 578 F.2d at 210-211, *infra*. Therefore even if Plaintiffs had sufficiently alleged a protected property interest of which they were deprived,

---

[4] The elevated "shocks the conscience" standard originally supplanted the "improper motive" standard in land use cases. *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392, 399-400 (3d Cir. 2003). This Circuit has since expanded this elevated standard to claims based on contracts with local government bodies. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)( Where "the crux of plaintiffs' claim [wa]s that the city falsely declared their homes imminently dangerous as a pretext to avoid completing the promised repairs[,] . . . merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision.")

12

the factual allegations must also sufficiently establish that the deprivation "shocks the conscience." *United Artists Theatre Circuit, Inc.*, 316 F.3d at 399-400. The "shocks the conscience" standard is "designed to avoid converting federal courts into super zoning tribunals" in land use cases. *Eichenlaub v. Twp. of Indiana*, 385 F.3d. 274, 285 (3d Cir. 2000). Prior to *United Artists* a plaintiff had only to plead that officials acted with an "improper motive." That standard is now insufficient to constitute a substantive Due Process violation. Now, a plaintiff must satisfy the "shocks the conscience" standard which "encompasses only the most egregious official conduct." *Chainey*, 523 F.3d at 219.

Indeed, in *Eichenlaub*, none of the following conduct was sufficient to meet the "shocks the conscience" standard: (1) application of "subdivision requirements to plaintiffs' property that were not applied to other parcels;" (2) officials pursuing "unannounced and unnecessary inspection and enforcement actions;" (3) officials delay of "permits and approvals;" (4) officials improperly increasing tax assessments; and (4) actions that "maligned and muzzled" the plaintiffs. *Eichenlaub*, 385 F.3d. 274; *see also Shamrock Creek v. Borough of Paramus et al.*, 2014 U.S. Dist. LEXIS 134935 * Civ. No. 12-2716 (September 24, 2014) (unpublished) (discussing the "more stringent" nature of the "shocks the conscience" standard). Indeed, in determining that the allegations did not meet the "shocks the conscience standard," the *Eichenlaub* court "noted there were no allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggested conscience-shocking behavior." *Chainey*, 523 F.3d at 220, *citing Eichenlaub*, 385 F.3d. at 286.

"Notably, improper motive alone is not enough to shock the conscience." *Strategic Envtl. Partners*, 184 F. Supp. 3d at 129, *citing Locust Valley Golf Club, Inc. v. Upper Saucon Twp.*, 391 F. App'x 195, 199 (3d Cir. 2010). Even actions undertaken by a public official for potential

13

personal gain have not been found to "shock the conscience." *See, Locust Valley Golf Club*, 391 F. App'x at 199 (allegations that a government official was blocking a property's development "in the remote hope that he might one day purchase the property himself" did not shock the conscience).

Simply put, the actions alleged in Plaintiffs' complaint are simply not egregious, abhorrent, or shocking enough to give rise to a substantive Due Process violation. Plaintiffs' substantive due process claim further fails for the reasons articulated by the City and the JCRA in their moving briefs, incorporated herein by reference.

## V. PLAINTIFFS' EQUAL PROTECTION AND FIRST AMENDMENT CLAIMS MUST BE DISMISSED.

The remaining Federal Claims alleged by Plaintiffs—the equal protection claim and First Amendment claims—must also be dismissed for the reasons set forth in the cogent analysis articulated in the moving briefs submitted by the City and the JCRA. To summarize, those claims against Mayor Fulop must be dismissed for the following reasons.

Plaintiffs fail to allege a violation of the Equal Protection clause because they fail to allege that they are members of a "protected class" or a "class of one." *Lorenzo v. Seeley,* No. Civ. Np..06 -1682, 2008 U.S. Dist. LEXIS 28318, at *9 (D.N.J. Apr. 7, 2008) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000). Plaintiffs furthermore fail to sufficiently allege that, even if they were treated differently from other developers, that they were "similarly situated" to those developers. *See Startzell v. City of Philadelphia,* 533 F.3d 183, 203 (3d Cir. 2008). Finally, even if Plaintiffs could satisfying the foregoing, they still fail to allege that any differential treatment was not rationally related to the achievement of a legitimate government interest. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988).

Plaintiffs also fail to sufficiently allege claims as to their First Amendment rights. Plaintiffs fail to allege that they engaged in constitutionally protected conduct as to their freedom of speech or freedom of association. *See, Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). At most, Plaintiffs allege that Jared Kushner, who had severed ties with Plaintiffs by the time of the alleged actions, was engaged in political action. However, Plaintiffs do not and cannot assert that they individually undertook any action protected under the first amendment. Plaintiffs also fail to sufficiently allege that they suffered a retaliatory action. Plaintiffs by their own admission breached the terms of their agreement with the JCRA, and the Redevelopment Agreement was therefore cancelled. Finally, Plaintiffs fails to show any causal nexus between any alleged exercise of their First Amendment rights and any alleged retaliation. Accordingly, Counts Seven and Eight must be dismissed for failure to state a claim.

## VI.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED.

Finally, it is clear that Plaintiffs' Contract Claims against Mayor Fulop (Counts 1 through 4) must be dismissed as a matter of law, as Mayor Fulop is not a party to the Redevelopment Agreement. Complaint, Exhibit A. "Under contract law, a *party* who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." *Pickett v. Lloyd's*, 131 N.J. 457, 474 (1993) (emphasis added) (*citing Donavan v. Bachstadt*, 91 N.J. 434, 445-45 (1982). The most cursory review of the Redevelopment Agreement makes it clear that Mayor Fulop is not a party to the contract, and cannot be held liable for breaches by the actual parties to the Redevelopment Agreement.

Not only is Mayor Fulop not a party to the Redevelopment Agreement, but there is no statutory or other justification for the Mayor to be considered a party to the Redevelopment Agreement. In *Candeliere v. U.S.A.*, 816 F.Supp.94 (D.N.J. 1992) the Court refused to make a

15

Mayor a party to a settlement agreement between a plaintiff and the city council acting as a redevelopment agency.

> There is no basis for considering the Mayor and City as proper, or indispensable, parties to the settlement. Mayor Brown has neither statutory nor equitable authority to veto or upset the duly authorized settlement of the Candeliere relocation claim as approved by the City Council. Formal inclusion of the Mayor in the pleadings of the underlying action is not necessary where, as in the present instance, complete relief may be obtained by an order of *mandamus* for the performance of a ministerial act.

*Id.* at 1000. Simply put, the Redevelopment Agency could be made to either proceed with the Redevelopment Agreement or could be held liable for any breaches of same. Mayor Fulop could be bound by any Court order to perform a required ministerial act related to the performance of the Redevelopment Agreement. But he is not a party to the same, and the breach of contract claims against him fail as a matter of law.

Mayor Fulop further relies upon, and incorporates by reference herein, the relevant arguments of the City in support of their motion to dismiss the Contract Claims.

## CONCLUSION

For the foregoing reasons, Defendant Mayor Fulop respectfully requests that Plaintiffs' Complaint against him be dismissed in its entirety.

Respectfully submitted,

**WHIPPLE AZZARELLO, LCC**

By: s/John A. Azzarello

John A. Azzarello

Dated: September 5, 2018
Morristown, New Jersey

16