UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ONE JOURNAL SQUARE PARTNERS URBAN RENEWAL COMPANY LLC, ONE JOURNAL SQUARE TOWER NORTH URBAN RENEWAL COMPANY LLC, and ONE JOURNAL SQUARE TOWER SOUTH URBAN RENEWAL COMPANY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JERSEY CITY DEVELOPMENT AGENCY, CITY OF JERSEY CITY, and STEVEN FULOP, <br><br> Defendants. | Civil Action No 2:18-cv-011148 (JMV)(JBC) <br><br><br><br><br> Document Filed Electronically |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT ON BEHALF OF DEFENDANT STEVEN FULOP

WHIPPLE AZZARELLO, LLC
John A. Azzarello, Esq. (JA 4363)
161 Madison Avenue, Suite 325
Morristown, New Jersey 07960
Telephone: 973-267-7300
azzarello@whippleazzarellolaw.com
Attorneys for Defendant Steven Fulop

Counsel:

    John A. Azzarello

On the Brief:

    John A. Azzarello
    Amy Valentine McClelland

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT ..........................................................................................1

LEGAL ARGUMENT..........................................................................................................1

    I.    The Mayor is Entitled to Qualified Immunity .....................................................1

           A. The Specific Actions Taken by Mayor Fulop Did Not Violate a Constitutional Right..........................................................................................................2

           B. There Was No Knowing Constitutional Violation........................................4

    II.   A Mayor's Advocacy on His Constituents' Behalf is Not "Corrupt"..................5

CONCLUSION....................................................................................................................8

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Addiction Specialists, Inc. v. Twp. of Hampton,* 411 F.3d 399 (3d Cir. 2005) ...................... 4

*Brace v. City of Luzerne,* 873 F. Supp. 2d 616 (M.D. Pa. 2012) ............................................ 7

*Butz v. Economou,* 438 U.S. 478 (1978) ............................................................................ 1, 2

*Capone v. Marinelli,* 868 F.2d 102 (3d Cir. 1989) ................................................................. 1

*Ecotone Farm LLC v. Ward,* 639 Fed. App'x 118 (3d Cir. 2016) .......................................... 5

*Frompovicz v. Twp. of S. Manheim,* No. 06-2120, 2007 U.S. Dist. LEXIS 74361 (M.D. Pa. Oct. 4, 2007) ................................................................................................................................ 6

*Grant v. City of Pittsburgh,* 98 F.3d ,116, 121 (3d. Cir. 1996) ......................................... 2-3, 5

*Gwynedd Props., Inc. v. Lower Gwynedd Twp.,* 973 F. 2d. 1195 (3d Cir. 1992) .................. 4

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ........................................................................ 1, 2

*Heritage Farms, Inc. v. Solebury Twp.,* 671 F.2d 743 (3d Cir. 1983) .................................... 4

*Khudaverdyan v. Holder,* 778 F.3d 1101 (9th Cir. 2015) ....................................................... 6

*Morse v. Lower Merion School Dist.,* 132 F. 3d 902 (3d Cir. 1997) ..................................... 4

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ............................................................................... 1

*Schimes v. Barrett,* No. 07-0872, 2010 U.S. Dist. LEXIS 30745 (M.D. Pa. Mar. 30, 2010) . 7

*Willow Creek Winery, Inc. v. Borough of W. Cape May,* No. 12-6329, 2015 U.S. Dist. LEXIS 173594 (D.N.J. Dec. 30, 2015) ................................................................................................ 6

## PRELIMINARY STATEMENT

Plaintiffs' lengthy and protracted Memorandum of Law in Opposition to Defendants' Motions to Dismiss fails to save its federal claims against Mayor Fulop, which must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). It is a sign of Plaintiffs' overarching desperation that they resort to accusing Mayor Fulop of corrupt self-dealing for doing nothing more than speaking out in his constituents' interest against a massive tax break and corporate charity for an avaricious developer. Their defamatory accusations should be disregarded and their claims dismissed. In addition to the responsive points below, Mayor Fulop relies on the relevant arguments set forth in the reply briefs filed by the City of Jersey City (the "City") and the Jersey City Redevelopment Agency (the "JCRA").

## LEGAL ARGUMENT

### I. Qualified Immunity Applies to the Discretionary Decision Made By The Mayor.

Taking all of Plaintiff's *factual* allegations as true still does not amount to a *legal* conclusion that Mayor Fulop is not entitled to qualified immunity for the official actions he took. Qualified immunity is "'available to officers of the executive branch of government, the variation being dependent on the scope of discretion and responsibilities of the office and to all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based.'" *Butz v. Economou*, 438 U.S. 478, 497 (1978) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 247-48, (1974)). The immunity afforded applicable to Mayor Fulop acts to shield him and other "government officials performing discretionary functions." *Capone v. Marinelli*, 868 F.2d 102, 104 (3d Cir. 1989) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In such cases, '[i]t is the existence of reasonable grounds for the belief formed at the time and in light of all the

1

circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.'" *Butz*, 438 U.S. at 498.

### A. The Specific Actions Taken by Mayor Fulop Did Not Violate A Constitutional Right.

Here, application of the qualified immunity principle requires evaluation of whether the Plaintiffs have a protected Constitutional right and whether Mayor Fulop's *specific actions* knowingly violated that clearly established right. *Harlow*, 457 U.S. at 818. They do not have a protected Constitutional right for the reasons cogently set forth in the moving and reply briefs of the City and the JCRA. In opposing public funding in the form of tax abatements for Plaintiffs projects, Mayor Fulop did not knowingly violate any clearly established Constitutional right to such abatements. Plaintiffs improperly conflate any contractual rights they may have had with Constitutional ones. Their attempts to do so cannot constitute a knowing violation on Mayor Fulop's part.

As instructed by *Grant v. City of Pittsburgh*, 98 F.3d. 116, 121 (3d. Cir. 1996), it is not enough for Plaintiffs to generally allege that Mayor Fulop was opposed to their development plans for political reasons and sabotaged those plans for his own self-interest and in violation of their Constitutional rights. "Rather, the question is whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Grant*, 98 F.3d at 121 (emphasis in original). The only *specific conduct* alleged against Mayor Fulop was opposition to the tax abatements (and alleged failure to recommend them to the City Council). Plaintiffs would therefore have to allege that this *specific conduct* violated their Constitutional rights by providing some basis for this Court to conclude that there is a Constitutional right to tax abatements. This, of course, they cannot do. Even if they had a contractual right to the tax abatements, they do not have a Constitutional right to them.

Indeed, Plaintiffs' allegations provide the exact situation instructed by *Grant* where dismissal at the pleading stage on the basis of qualified immunity is appropriate. *Grant* noted that there would be situations where "a district court could conclude (as could a court of appeals) that, even assuming that the public official acted with the improper intent, a reasonable public official would not have known that his or her *specific conduct*, taken with that intent, violated clearly established law." *Grant*, 98 F.3d at 126.

Even ascribing the political animus alleged by Plaintiffs does not change the specific actions taken by Mayor Fulop, which must be the focus of this Court's qualified immunity analysis. The allegations of his conduct are limited to his opposition to the tax abatements and it is notable that the Amended Complaint acknowledges the limits of his opposition in their detailed timeline of their project.

Plaintiffs' argument against qualified immunity is therefore fatal in that it implicitly acknowledges all that Mayor Fulop did not do. He did not oppose amendments to the site plans. (Amended Complaint ¶47, 56). He did not interfere with planning board applications (Amended Complaint ¶47). He did not inhibit execution of the pledge agreement. (Amended Complaint ¶ 79). Indeed, his "opposition" only occurred when matters directly under his discretion and purview surfaced—an application for tax abatements made in April, 2017. (Amended Complaint ¶ 70). For this Court to deny Mayor Fulop qualified immunity would have a terrifyingly and unjust chilling effect on a local government official's exercise of official functions, especially as they relate to financial matters. Indeed, a failure to apply qualified immunity to Mayor Fulop in this matter would undoubtedly lead to other local officials being "strong-armed" into financial agreements that may not be beneficial to taxpayers, for fear that their refusal will encourage claims of "Constitutional" violations even where none exist.

## B. There Was No Knowing Violation of a Constitutional Right.

To that end, Mayor Fulop's decision simply does not give rise to a Constitutional violation sufficient to underpin a §1983 action. They differ entirely from the allegations in *all* of the cases relied upon by Plaintiffs. Mayor Fulop did not "destroy" Plaintiffs' rights to develop their property. *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743 (3d Cir. 1983). He did not "violate" Plaintiffs' right to "reasonable use and development" of their land. *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 973 F. 2d. 1195 (3d Cir. 1992). He did not "selectively" enforce zoning ordinances to obstruct construction. *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399 (3d Cir. 2005). He merely disagreed with enriching Plaintiffs at taxpayers' expense. That opposition does not constitute a knowing violation of a Constitutional right.

The only rights Plaintiffs can assert in either the Property or the tax abatements to finance their development plans arise from the Redevelopment Agreement entered into by the JCRA. The rights are granted by contract; interference with those rights similarly sound in contract. As set forth in the reply brief filed by the City, Mayor Fulop is neither a party to the Redevelopment Agreement, nor is there any legal basis to allege that the contractual decisions of an autonomous, statutorily-authorized agency can impute Constitutional violations on the Mayor.[1]

Indeed, the common theme in all of the cases relied upon by Plaintiffs is the interference of the government official in violation of a party's rights. The allegations against Mayor Fulop, stripped of their hyperbole and embellishment, is that he opposed the tax abatements requested by Plaintiffs. Plaintiffs go to great lengths to inform this Court of his pronouncements regarding

---

[1] Plaintiffs' allegations that the Mayor had the "final, unreviewable authority" over the JCRA's decisions are legal, not factual, conclusions and are entitled to no deference. *Morse v. Lower Merion School Dist.*, 132 F. 3d 902, 906 (3d Cir. 1997). Moreover, they are belied by the legal standing of the JCRA.

4

same. But both having that opinion and communicating it to his constituents was well within his rights as Jersey City's chief executive officer. His specific action simply does not constitute a knowing violation of a Constitutional right.

Finally, the allegations made by Plaintiffs are sufficient for this Court to determine the qualified immunity at this stage of the pleadings, resolving the qualified immunity question as early in the litigation as possible. "[T]he Supreme Court's admonition [is] that qualified immunity be resolved as early in the litigation as possible." *Grant*, 98 F.3d at 122. This Court should dismiss the claims against Mayor Fulop on the basis of qualified immunity.

## II. A Mayor's Advocacy on Behalf of his Constituents Is Not "Corruption."

Plaintiffs' substantive due process claim also fails because the actions they allege against Mayor Fulop are not conscience shocking. Plaintiffs are correct that at the pleading stage, it is sufficient to state "conscience shocking" conduct *facts*. But they do not. They state *facts* of Mayor Fulop's opposition to tax abatements that are neither shocking nor corrupt. And then they label them as conscience shocking based on a *theory* of political intrigue that is completely lacking in factual support.[2] There is nothing "abusive" of the public trust in promoting public interest over corporate avarice. To the contrary, as the chief executive officer of Jersey City, Mayor Fulop should not be silenced from speaking on behalf of his constituency. Permitting the Federal Claims against him to proceed would have exactly that effect.

Again, the allegations in the cases cited by Plaintiffs all stand in stark contrast to the allegations against Mayor Fulop. *Ecotone Farm LLC v. Ward*, 639 Fed. App'x 118, 126 (3d Cir. 2016) is repeatedly cited by Plaintiffs. But Mayor Fulop is not alleged to have "abuse [his]

---

[2] Notably, the concept that Mayor Fulop's opposition to the tax abatements requested by Plaintiffs constitutes "corruption" is not pled in Plaintiffs' Amended Complaint.

5

government power" for the personal benefit of his own finances. In relying on *Willow Creek Winery, Inc. v. Borough of W. Cape May,* No. 12-6329 (NLH) 2015 U.S. Dist. LEXIS 173594, *7 (D.N.J. Dec. 30, 2015), Plaintiffs neglect to mention that it was the "threat" to that defendant mayor's "financial interests" that the court concluded distinguished the case from other zoning disputes in denying summary judgment on substantive due process claims. Mayor Fulop has no financial interest in either supporting or opposing tax abatements for Plaintiffs' project. In citing to *Frompovicz v. Twp. of S. Manheim,* No. 06-2120, 2007 U.S. Dist. LEXIS 74361, *36-37 (M.D. Pa. Oct. 4, 2007), Plaintiffs in fact highlight that public corruption is basing official decisions on "personal reasons unrelated to the merits" of a proposal. Even the Ninth Circuit footnote cited by Plaintiffs for the proposition that "dishonest gain [ ] need not be financial" offers Plaintiffs no safe harbor to pursue their claims against Mayor Fulop. The Ninth Circuit merely concluded that one form of "dishonest gain" would be maintenance of a positon of authority, such as evidence that a police chief used his authority to silence reports of his own abuse of power. *Khudaverdyan v. Holder,* 778 F.3d 1101, 1108 n. 5 (9th Cir. 2015) (internal citations omitted). Such subservient behavior could not be more different from the very public position taken by Mayor Fulop in communicating his opposition to the public funding requested by Plaintiffs. For Plaintiffs to stretch such a decision—political or otherwise—into a corrupt means of retaining elected office is a reach too far. In short, the allegations are simply too attenuated to constitute "conscience shocking" behavior.

Indeed, the allegations against Mayor Fulop detail his focus on a very narrow subset of Plaintiffs' plans—their reliance on developing their property on backs on the Jersey City taxpayers. Mayor Fulop does not show *self* interest in opposing those tax breaks—he shows *constituent* interest. Indeed, it is notable that Plaintiffs were unable to point to single case where

6

an elected official's opposition to public funding of a project was found to be "conscience shocking."

To that end, *Brace v. City of Luzerne*, 873 F. Supp. 2d 616 (M.D. Pa. 2012), *aff'd* 535 F. App'x. 155 (3d Cir. 2013), is instructive. The defendant government officials were accused of violating the plaintiff's substantive due process rights by terminating his pension benefits. In granting the defendants' motion to dismiss that claim, the court concluded that the plaintiff's allegations "indicate that Defendants acted in what [they] perceived to be its legal and financial interest [and] does not demonstrate the sort of egregious conduct that would shock the conscience." *Id.* at 627 (quoting *Schimes v. Barrett*, No. 07-0872, 2010 U.S. Dist. LEXIS 30745, *8 (M.D. Pa. Mar. 30, 2010).

Like the defendants in *Brace*, the Mayor's opposition to the tax abatement application indicate that the Mayor was acting in the City's best financial interest. A financial decision made for the Mayor's own "personal political gain to curry favor" with his voters is simply a nefarious-sounding way of saying he was making a financial decision his constituents would support. How does that abuse the public trust? The action is neither corrupt nor conscience shocking. What the Plaintiffs want to label as corruption is representative democracy. Their substantive due process claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Mayor Fulop respectfully requests that Plaintiffs' Amended Complaint against him be dismissed in its entirety.

Respectfully submitted,

**WHIPPLE AZZARELLO, LLC**

By: *s/John A. Azzarello*

John A. Azzarello

Dated: December 12, 2018
Morristown, New Jersey

8