Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ONE JOURNAL SQUARE PARTNERS
URBAN RENEWAL COMPANY LLC, et al.,

*Plaintiffs*,

v.

JERSEY CITY REDEVELOPMENT
AGENCY, et al.

*Defendants*.

Civil Action No. 18-11148

OPINION

**John Michael Vazquez, U.S.D.J.**

This matter concerns an immense redevelopment project in Jersey City. The financial stakes are quite high. Plaintiffs accuse Defendants of breaching agreements related to the project. The Court, however, does not have independent jurisdiction over Plaintiff's contract, quasi-contract, and tort claims. To invoke the Court's subject matter jurisdiction, Plaintiffs assert an overarching theory of political retribution of a constitutional magnitude. But Plaintiffs' factual assertions in support of this theory fall well short of the requisite pleading standard. As a result, the Court dismisses the matter.

Plaintiffs are One Journal Square Partners Urban Renewal Company LLC, One Journal Square Tower North Urban Renewal Company LLC, and One Journal Square Tower South Urban Renewal Company LLC (collectively "JSP" or "Plaintiffs"). Defendants are Jersey City Redevelopment Agency ("JCRA"), City of Jersey City (the "City"), and Steven Fulop (collectively "Defendants"). Fulop is the City's mayor.

Currently pending before the Court are three motions to dismiss Plaintiffs' First Amended Complaint ("FAC") by Defendants, brought pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. D.E. 29, 30, 31. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motions are granted.

## I. INTRODUCTION[2]

At issue is a $900 million real estate development project (the "Project") at One Journal Square in Jersey City, New Jersey. FAC ¶ 1. Plaintiffs are affiliated entities that purchased the property on February 14, 2014 from a prior developer. FAC ¶¶ 1, 3-5, 27. One of the principal investors in Plaintiffs is Kushner Companies LLC. *Id.* ¶ 1. Jared Kushner was the CEO of Kushner Companies LLC until January 9, 2017, when he was named a senior advisor to President Trump, a position Kushner still holds today. *Id.* ¶¶ 1, 28, 63.

On April 21, 2015, Plaintiffs and JCRA entered into an agreement (the "Redevelopment Agreement") whereby Plaintiffs would construct the Project, which includes two residential towers (one 70-story tower and one 50-story tower, housing a maximum of 3,000 residential units

---

[1] JCRA's moving brief will be referred to as "JCRA Br.," D.E. 29-1; Fulop's moving brief will be "Fulop Br.," D.E. 30-1; the City's moving brief will be "City Br.," D.E. 31-1; Plaintiffs' omnibus opposition will be "Pl. Opp'n," D.E. 36; JCRA's reply will be "JCRA Reply," D.E. 38; Fulop's reply will be "Fulop Reply," D.E. 41; the City's reply will be "City Reply," D.E. 39.

[2] The facts are derived from Plaintiffs' FAC, D.E. 26. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

2

combined), seated atop an 11-story base building housing 160,000 square feet of commercial space and a 1,500-space parking garage. FAC ¶ 32; D.E. 26-1 ("RA") at Schedule B-1. The Redevelopment Agreement placed a series of obligations on both Plaintiffs and JCRA in completing the Project. *See* RA §§ 2.01-16.12, Schedule C-1, Schedule C-2. Plaintiffs then began work on the Project. FAC ¶¶ 58-59.

Plaintiffs identify two critical events that reportedly engendered animosity with Defendant Fulop. First, on May 6, 2017, during a presentation in China to potential investors in the Project, Nicole Kushner Meyer (Jared Kushner's sister) "made comments about the Project," FAC ¶ 71, such as that the Project "means a lot to me and my family," as reported by the New York Times, Javier C. Hernandes, Cao Li, and Jesse Drucker, *Jared Kushner's Sister Highlights Family Ties in Pitch to Chinese Investors*, The New York Times (May 6, 2017). The following day, Fulop posted a link to the New York Times article on Facebook and made the following comment:

> I want to be clear with the residents on where the City stands here. Last week, the Developer of this Project submitted an application to Jersey City for tax subsidy and abatement of this property. The administration made clear to the applicant that the City is not supportive of their request and while the law requires a first reading ordinance vote, if they submit an application I don't see the council voting in favor.

FAC ¶ 72 (emphasis omitted); D.E. 26-3 at 2.

Second, on January 24, 2018, Bloomberg published an article quoting Charles Kushner (Jared Kushner's father), suggesting that the Project would break ground in 2018. FAC ¶ 90; David Kocieniewski and Caleb Melby, *Elder Kushner Met With N.J. Mayor, Sees 2018 Groundbreaking*, Bloomberg (January 24, 2018). The same day, Fulop responded by calling a partner with Kushner Companies on the Project, and stating, "what the f*** is going on with this

3

article?" FAC ¶ 91. Fulop also allegedly told the partner that he would no longer support the Project. *Id.* On June 29, 2018, Fulop then tweeted a link to the Bloomberg article and stated:

> I think our office/comment is 100% clear in the story. Our position has NOT changed + we don't see support for incentives or abatements from the city for this project. . . . I suspect it's DOA.[3]

*Id.* ¶ 92; D.E. 26-3 at 3.

Two weeks before Charles Kushner's comments to Bloomberg, Fulop met with representatives of Plaintiffs on January 10, 2018. FAC ¶ 88. During the meeting, Fulop allegedly made some comments concerning tax abatements on the project, including that it would be "blatant discrimination" for Plaintiffs to be refused tax abatements because a prior developer had been granted abatements, other similarly-situate developers received abatements, the Redevelopment Agreement required Defendant JCRA to cooperate in obtaining abatements, and Fulop's executive order mandated abatements. *Id.* Yet, Fulop said that the problem was the involvement of the "Kushner family" in the Project, adding that the problem would disappear if the Kushners were replaced. *Id.*

On April 17, 2018, Defendant JCRA served on Plaintiffs a Notice of Default (the "Notice"). FAC ¶ 98; D.E. 26-4 ("NOD"). The Notice claimed that Plaintiffs defaulted on their obligations under the Redevelopment Agreement in three ways: (1) failure to timely commence construction; (2) failure to timely submit evidence of firm commitments on financing; and (3) failure to timely satisfy other agreed upon contingencies, such as securing government funding and approval. FAC ¶ 99; NOD at 1. Plaintiffs allege that the Notice asserts frivolous violations of the Redevelopment Agreement, and that instead, JCRA's true motivation for the Notice is political animus towards

---

[3] The Court assumes "DOA" to mean "dead on arrival."

4

Jared Kushner and President Trump. FAC ¶¶ 1, 100. Plaintiffs set forth numerous factual allegations demonstrating why the Notice is legally unsupportable. *Id.* ¶¶ 101-118.

On June 27, 2018, Plaintiffs filed their Complaint. D.E. 1. In response to an article reporting on the Complaint, Fulop tweeted the following on June 27, 2019:

> Nonsense. Bottom line: the same way they illegally try to use the presidency to make $ when it suits them is the same way here where they try to use the president to pretend to be victims when it suits them. Lawsuit = they will say/do anything to make $.

*Id.* ¶ 119; D.E. 26-3 at 7. The following day, on June 28, 2018, Fulop stated the following in an email to reporters:

> It's not like the Kushners have a great deal of credibility in anything they say. Their entire lawsuit is hearsay nonsense. Bottom line – the same way they illegally use the presidency to make money is the same way here they try to use the presidency to be pretend victims. They will do anything to manipulate a situation.

*Id.* ¶ 120 (emphasis omitted).

Plaintiffs immediately sent a cease and desist letter to Fulop, demanding that he stop making such statements. *Id.* ¶ 121. In response, Fulop tweeted the following on June 29, 2018:

> I got another letter from the Kushner family today threatening to sue me AGAIN. They demand an apology for saying the truth + they even drafted a tweet for me to send out. It's not going to happen. I'll revise my tweet slightly when THEY apologize publicly (maybe) . . . . I'm not going to apologize for saying the truth. Whether it's inaccurately reporting ownership in properties, or misrepresenting $ partners, or outright saying in China that $ in Jersey City properties means lots to the family, I think the public can judge 4 themselves[.]

*Id* (emphasis omitted); D.E. 26-3 at 8.

In addition to Fulop's tweets, on September 5, 2018, Defendants moved to dismiss the original Complaint. D.E. 19, 20, 21. On September 26, 2018, Plaintiffs filed the FAC, asserting the following eleven Counts: (I) breach of contract; (II) breach of cooperation covenant; (III)

5

breach of covenant of good faith and fair dealing; (IV) promissory estoppel; (V) substantive due process violation, brought pursuant to 42 U.S.C. § 1983; (VI) equal protection violation, brought pursuant to 42 U.S.C. § 1983; (VII) free speech violation, brought pursuant to 42 U.S.C. § 1983; (VIII) free association violation, brought pursuant to 42 U.S.C. §§ 1983 and 1988; (IX) procedural due process violation, brought pursuant to 42 U.S.C. §§ 1983 and 1988; (X) tortious interference with contract; and (XI) tortious interference with prospective business advantage. FAC ¶¶ 127-209. On October 24, 2018, Defendants filed their current motion. D.E. 29, 30, 31. Plaintiffs opposed this motion, D.E. 36, and Defendants replied, D.E. 38, 39, 41.

## II. STANDARD OF REVIEW

Rule 12(b)(1)

Rule 12(b)(1) "provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing Fed. R. Civ. P. 12(b)(1)). "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Id.* (citing *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) and *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970)). On a motion to dismiss for lack of standing, "[p]ursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975) and *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). "[T]he plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]" *Id.* (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992)) (internal quotations omitted). "However, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *Id.* (quoting *Lujan*, 504 U.S. at 561).

Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III. ANALYSIS

Plaintiffs invoked the Court's subject matter jurisdiction under 28 U.S.C. § 1331, on the basis of federal question, as alleged in Counts V-IX for violations of 42 U.S.C. § 1983. FAC ¶¶ 151-185. Defendants argue that Plaintiffs fail to plausibly plead these Section 1983 claims. JCRA Br. at 10-18; City Br. at 9-24; Fulop Br. 10-16. The Court agrees. Without the Section 1983 claims, the Court lacks subject matter jurisdiction over the remaining contractual, quasi-contractual, and tort counts.[4]

Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)).

---

[4] Defendants also attack certain of the contractual, quasi-contractual, and tort claims. The Court does not reach these arguments in light of the Court's findings as to the Section 1983 allegations.

First Amendment (Counts VII and VIII)

Plaintiffs assert a violation of two First Amendment rights: freedom of association (Count VIII) and freedom of speech (Count VII). FAC ¶¶ 165-181. Both claims rely on the same theory: Defendants retaliated against Plaintiffs for Jared Kushner's political affiliation with the Trump Administration. *Id.* ¶¶ 169-70 ("The activities of Jared Kushner constitutes [sic] protected political speech, including but not limited to his participation in public service for the Trump Administration[] [and] Defendants' issuant of the Notice of Default was an act of retaliation for Plaintiffs' exercise of their First Amendment rights."), ¶ 177 ("Defendants . . . deprived Plaintiffs of their First Amendment Rights of free association by engaging in retaliatory action for the exercise of these rights"). Defendants argue that Plaintiffs fail to plausibility plead a causal link between the alleged retaliation, on the one hand, and Jared Kushner's affiliation with the Trump Administration, on the other. JCRA Br. at 17; City Br. at 15; Fulop Br. at 16. The Court agrees.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege the following: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). This third element, "a causal link," requires "but-for" causation. *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "One method of proving a causal link . . . is 'unusually suggestive temporal proximity.'" *Id.* at 652 (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

In *Mirabella*, the plaintiffs were displeased with their neighbors' encroachment onto public wetlands abutting their properties. *Id.* at 646-47. As a result, the plaintiffs emailed their local

9

government, encouraging them to act while threatening litigation at the same time. *Id.* at 646. One of the defendants, a local official, responded the same day with a "no contact"[5] email, that is, demanding that the plaintiffs "never contact [him], the Board of Supervisors[,] or the Township employees directly" but to "direct all further communications to the Township attorney." *Id.* at 647 (emphasis omitted). The local official added that "[t]he dye is caste [sic]." *Id.* The plaintiffs then brought suit, alleging a First Amendment retaliation claim. *Id.* at 648.

The *Mirabella* court, in evaluating plaintiffs' First Amendment retaliation claim, observed that the plaintiffs alleged that "[o]n the very same day that the Mirabellas emailed the Township to protest its treatment of the open space, and to threaten litigation, [the defendant local official] responded with the 'no contact' email." *Id.* at 652. The *Mirabella* court clarified that "[t]his allegation of temporal proximity is itself sufficient." *Id.* at 652 n. 6. However, "[i]n addition, [the court] infer[red] that [the local official]'s 'no contact' email was a direct response to the threat of litigation because . . . [the local official] meant that the Mirabellas cast the die by threatening litigation against the Township." *Id.* Thus, the Circuit found that the plaintiffs established the requisite "causal link." *Id.* at 652.

Here, Plaintiffs fail to sufficiently plead a causal link. To be sure, Plaintiffs plead a sufficient temporal link between Fulop's responses to Nicole Kushner Meyer and Charles Kushner's remarks, but these allegations do not get Plaintiffs into the Section 1983 arena. Instead, Plaintiffs allege that Defendants retaliation (the Notice) was for "Jared Kushner['s] . . . participation in public service for the Trump Administration." FAC ¶ 169, *see also id.* ¶ 177.

---

[5] The Third Circuit recognized "no contact" to be a term of art, "used to refer to a rule of professional conduct, prohibiting contact with a represented person, regarding the subject of the representation, absent consent or legal authority." *Id.* at 647 n. 2.

However, the timing of the Notice when compared with Jared Kushner's affiliation with the Trump Administration do not plausibly support this claim.

Plaintiff alleges that Jared Kushner's political affiliation with the Trump Administration dates back to at least the 2016 election cycle, when "Jared Kushner advised the Trump Campaign and Administration with respect to various issues[.]" *Id.* ¶ 60. However, Defendants did not take any retaliatory action against Plaintiffs at that time. President Trump then won the general election on November 8, 2016. *Id.* ¶ 62. Again, Plaintiffs do not allege that Defendants took any retaliatory action at that time. President Trump officially named Jared Kushner a senior advisor on January 9, 2017. *Id.* ¶ 63. But Plaintiffs do not claim that Defendants took any retaliatory action in response. President Trump was then officially sworn into office on January 20, 2017. *Id.* ¶ 64. Yet again, Plaintiffs do not allege that Plaintiffs retaliated. Defendants did not issue the Notice until April 17, 2018, *id* ¶ 98 – over *one year* after President Trump officially named Jared Kushner a senior advisor, and approximately two years (or longer) after Jared Kushner's unofficial political affiliation with the Trump Campaign began. The temporal proximity between January 2017 and April 2018 is too remote to plausibly establish a causal link.

An additional deficiency in the FAC is the paucity of allegations as to President Trump and Jared Kushner vis-à-vis Defendants, save for conclusory allegations. Plaintiffs sufficiently allege two inflammatory instances leading up to the Notice, neither of which involved Jared Kushner or the Trump Administration. First, on May 6, 2017, Nicole Kushner Meyer made comments about the Project to potential investors in China, as reported by the New York Times. FAC ¶ 71. Defendant Fulop publicly responded *the following day*:

> I want to be clear with the residents on where the City stands here. Last week, the Developer of this Project submitted an application to Jersey City for tax subsidy and abatement of this property. The administration made clear to the applicant that the City is not

11

> supportive of their request and while the law requires a first reading ordinance vote, if they submit an application I don't see the council voting in favor.

FAC ¶ 72 (emphasis omitted); D.E. 26-3 at 2. The plausible and reasonable inference is that Fulop was responding to Kushner Meyer's comments.

Second, on January 24, 2018, Bloomberg published an article quoting Charles Kushner, suggesting that the Project would break ground in 2018. FAC ¶ 90. *That same day*, Fulop responded by tweeting a link to the Bloomberg article and stating:

> I think our office/comment is 100% clear in the story. Our position has NOT changed + we don't see support for incentives or abatements from the city for this project. . . . I suspect it's DOA.

*Id.* ¶ 92; D.E. 26-3 at 3. Again, the plausible and reasonable inference is that Fulop was responding to Charles Kushner's comments.[6]

In addition, after the current lawsuit was first filed, Defendant Fulop publicly stated on June 28, 2018, that "the Kushners . . . illegally use the presidency to make money" while also using the presidency to portray themselves as victims. FAC ¶¶ 119, 120. First, the statements were in direct response to being sued and in response to Plaintiffs allegations of political retribution. Second, the statement is a general comment that the Kushners use the presidency as both a sword and a shield. The statement can be reasonably interpreted as expressing disapproval of anyone using the presidency in such a manner – but the statement does not plausibly imply that Fulop's comments were predicated on a particular president or a particular political party holding office.

---

[6] Another reasonable inference based on the allegations in the FAC is that Charles Kushner took a calculated risk in making the public comments, presumably hoping to force Fulop's hand. Charles Kushner's comments came soon after the January 10, 2018 meeting in which Fulop indicated that he would prefer to have the Kushners replaced in the Project.

12

In response to Fulop's June 28, 2018 tweet, Plaintiffs sent Fulop a cease and desist letter. *Id.* ¶ 121. The following day, on June 29, 2018, Fulop posted a copy of the letter on Twitter and tweeted that he received "another letter from the Kushner family today threatening to sue me AGAIN." *Id.* Fulop added that the Kushners' "outright [said] in China that $ in Jersey City properties means lots to the family[.]" *Id.* These allegations do not plausibly reflect retaliation based on a President Trump and Jared Kushner connection. Instead, they plausibly indicate a response to the cease and desist letter and a reference to Kushner Meyer's comments in China. Plaintiffs fail to plausibly plead their First Amendment retaliation claims. Counts VII and VIII are dismissed.

Equal Protection (Count VI)

Plaintiffs next assert an equal protection violation, alleging that Defendants "treat[ed] Plaintiffs differently from others similarly situated, both as to the application and procurement of the tax abatements . . . and extension of timetables," and that "Defendants have no rational basis for treating Plaintiffs differently from others similarly situated." FAC ¶¶ 158, 160. Defendants argue that JCRA had a rational basis for issuing the Notice – namely, that they issued the Notice pursuant to terms agreed upon by the parties in the Redevelopment Agreement. JCRA Br. at 16 ("JCRA acted in accordance with its contractual rights in issuing the Notice of Default"); Fulop Br. at 15; City Reply at 4-5.

The Fourteenth Amendment provides that "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Traditionally, a plaintiff must be a member of a protected class to assert a violation of this provision. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). However, the Supreme Court has since recognized a "class of one" theory, where a plaintiff can establish an equal protection violation by

showing that he has been "singled out" and "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)). Under this "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Here, Plaintiffs assert a "class of one" theory. Pl. Opp'n at 48-49. Plaintiffs allege that Defendants treated them differently than other developers by (1) not approving the Project's tax abatements, and (2) not extending the Project's timetables. FAC ¶¶ 158. Plaintiffs insist that Defendants' motive was arbitrary because it was "solely political . . . [with] an intent of harming anyone close to the president[.]" *Id.* ¶ 160. Plaintiffs add that Fulop's acted improperly by "publicly and aggressively opposing the president and those closely associated with him, including Jared Kushner." *Id.* ¶ 161. However, as explained above, Plaintiffs fail to plausibly plead that Defendants issued the Notice because of Jared Kushner's affiliation (or the Kushner family's affiliation, generally) with the Trump Administration or President Trump. Plaintiffs fail to plausibly plead an equal protection violation. Count VI is dismissed.

Due Process (Counts V and IX)

Plaintiffs next allege violations of substantive due process (Count V) and procedural due process (Count IX). FAC ¶¶ 151-56, 182-85. "The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 138 (3d Cir. 2000) (quoting U.S. Const. amend. XIV). To state a substantive due process claim, a plaintiff must allege that "(1) the particular interest at issue is protected by the substantive due process clause," and (2)

14

"the government's deprivation of that protected interest shocks the conscience." *Chainey v. St.*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400-02 (3d Cir. 2003)). This protected interest must be a "fundamental" interest under the Constitution. *Nicholas*, 227 F.3d at 140.

Here, Plaintiffs allege that (1) they have a "protected constitutional interest in and to the contractual rights set forth in the complex Redevelopment Agreement, and they underlying property on which the Project is to be developed," and that (2) Defendants' deprivation of these interests was "motivated by bias, bad faith and or/partisan political reasons and personal reasons unrelated to a proper governmental purposes and shock the conscience." FAC ¶¶ 152, 154. Defendants respond that (1) Plaintiffs have not asserted a fundamental interest protected by the Fourteenth Amendment, and that (2) Defendants' conduct does not shock the conscience. City Br. at 22-24; JCRA Br. at 12-14; Fulop Br. at 12-14. The Court agrees that Defendants' conduct does not shock the conscience, and therefore does not reach the issue of whether Plaintiffs assert a fundamental right.

"What shocks the conscience is only the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (quoting *United Artists*, 316 F.3d at 400) (internal quotations omitted). The test is "not precise" and "varies depending on the factual context." *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) and *United Artists*, 316 F.3d at 400). In the zoning and redevelopment context, the Third Circuit has indicated that "corruption or self-dealing" or "some bias against an ethnic group" may shock the conscience. *Id.* at 286; *see also Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) ("Guided by *Eichenlaub*, we see no evidence in this record from which a reasonable jury could find that racial invidiousness, corruption, or self-dealing motivated [the defendant]'s enforcement activities."). However,

15

common planning disputes do not meet the standard. *Eichenlaub*, 385 F.3d at 286; *see also Button*, 679 F. App'x at 154 ("[M]erely negligent or sometimes contentious performance of official duties ... does not shock the conscience."). "The shocks the conscience standard ... prevents this Court from being cast in the role of a zoning board of appeals." *Button*, 679 F. App'x at 154 (quoting *United Artists*, 316 F.3d at 402).

In *Eichenlaub*, the plaintiffs alleged that "zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the [plaintiffs]." 385 F.3d at 286. The Third Circuit found that "[t]hese complaints are examples of the kind of disagreement that is frequent in planning disputes" and do not rise to the level of shocking the conscience. *Id.*

Here, the same conclusion is warranted. Plaintiffs have not alleged racial discrimination, corruption, or self-dealing. Even if Plaintiffs plausibility alleged their political retribution theory, it is not clear that this would constitute conduct that shocks the conscience. Regardless, as explained above, Plaintiffs have not plausibly alleged this theory, and instead have alleged a property development dispute. Of course, the development at issue is enormous, but the cost of a project does not satisfy the shocks the conscience standard. Plaintiffs allege that Defendants granted tax abatements to other similar projects but not to Plaintiffs, FAC ¶¶ 20-22, 97; delayed certain government approvals, *id.* ¶¶ 50-57; and publicly maligned individuals associated with

Plaintiffs, *id.* ¶¶ 119-122. These allegations are insufficient to meet the shocks the conscience requirement. Plaintiffs' substantive due process claim (Count V) is dismissed.[7]

Turning to procedural due process, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Here, Plaintiffs allege that (1) "[t]he Notice . . . deprive[d] Plaintiffs of their property right in the Project," (2) "without due process of law . . . [d]espite reasonable efforts to obtain relief" by Plaintiffs. FAC ¶¶ 183-84. Defendants argue that (1) Plaintiffs fail to assert a property interest protected by the Fourteenth Amendment, and that (2) Plaintiffs have sufficient procedures available to contest the Notice. JCRA Br. at 14; City Br. at 18-22; Fulop Br. at 10-12. The Court agrees that Plaintiffs have sufficient procedures available to protect their rights under the Redevelopment Agreement and state law, and therefore does not reach the issue of whether Plaintiffs have asserted a protected interest under the Fourteenth Amendment.

One procedure available to Plaintiffs was to cure the breaches identified in the Notice, as allowed by the Notice, NOD at 1 (demanding that Plaintiffs "cure the foregoing [breaches]"), and by the Redevelopment Agreement, RA at 37 ("in the event of any default in or breach of this

---

[7] Because the Court is dismissing the substantive due process claim on the determination that Defendants' conduct does not plausibly shock the conscience, the Court does not opine on whether Plaintiffs have asserted a fundamental interest for purposes of substantive due process protection. The Court, however, notes that Third Circuit precedent is not entirely clear on the issue. *Compare Indep. Enterprises Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 (3d Cir. 1997) (noting that some cases involving "zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs . . . implicat[ed] the 'fundamental' property interest in the ownership of land"); *with Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 931-32 (3d Cir. 1995) (finding that a public housing contractor did not have a "protectible property interest in its contract with [the government agency] that is entitled to Fourteenth [] Amendment protection.").

Agreement . . . [Plaintiffs] shall, within thirty (30) days of receiving written notice from the other, proceed to commence to cure or remedy such default or breach."). To the extent that Plaintiffs could not cure these defects due to roadblocks set by Defendants, Plaintiffs could "institute . . . proceedings [in state court] to compel specific performance by [Defendants]," as provided for in the Redevelopment Agreement. RA at 37-38. Also, Plaintiffs can still pursue contractual and tort remedies in state court. Because these alternative procedures are/were[8] available, Plaintiffs have not plausibly pled a procedural due process claim. *See Coulter v. Butler Cty. Children & Youth Servs.*, 512 F. App'x 145, 148 (3d Cir. 2013) (finding that the plaintiff had "ample procedural due process" when she had access to "full appellate review in state court" of the state actor's conduct). Plaintiffs' procedural due process claim (Count IX) is dismissed.[9]

---

[8] The FAC does not clearly indicate whether Defendants have in fact terminated the Project, or if Plaintiffs still have any opportunity to cure the defaults listed in the Notice. Although Plaintiffs state that the Notice "had the effect of" terminating the Redevelopment Agreement, FAC ¶ 117, the text of the Notice does not in itself terminate the Redevelopment Agreement, as it "demands that [Plaintiffs] cure the foregoing [defaults]" but does not provide a timeframe for such, and indicates that Defendants, "without further notice or demand . . . may enforce or avail [themselves] of any or all rights or remedies provided in the Redevelopment Agreement including, without limitation, all rights or remedies available at law or in equity." NOD at 1-2. Plaintiffs do not allege that Defendants have taken further steps in asserting their rights under Redevelopment Agreement since issuing the Notice.

[9] Because the Court is dismissing the procedural due process claim for adequate available procedures, the Court again does not analyze whether Plaintiffs have asserted a property interest protected by the Fourteenth Amendment. However, the Court notes the following apt observation:

> [I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities[] . . . [and] such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1398 (3d Cir. 1991) (quoting *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989)). *See also TM Park Ave. Assocs. v. Pataki*, 214 F.3d

The Court therefore dismisses all of Plaintiffs' Section 1983 claims[10] pursuant to Rule 12(b)(6) for failure to state a claim.[11] As a result, the Court does not have subject matter jurisdiction over this action and dismisses it accordingly.

## IV. CONCLUSION

In sum, the Court grants Defendants' motions to dismiss Plaintiffs' Section 1983 claims in the FAC (Counts V-IX) pursuant to Rule 12(b)(6) for failure to state a claim, D.E. 29, 30, 31. These Counts are dismissed without prejudice. The Court does not have independent jurisdiction over Plaintiffs' remaining contract, quasi-contract, and tort claims (Counts I-IV, X-XI). As a result, the Court dismisses the matter. Plaintiffs may, within thirty (30) days, either (a) file an amended complaint curing the deficiencies noted herein; or (b) refile this action in the appropriate state court. If Plaintiffs intend to refile this action in state court, Plaintiffs are to timely notify this Court. An appropriate Order accompanies this Opinion.

Date: August 7, 2019

John Michael Vazquez, U.S.D.J.

---

344, 348 (2d Cir. 2000) ("'Mere refusal to perform a contract by a state does not raise a constitutional issue.'" (quoting *E & E Hauling, Inc. v. Forest Pres. Dist. of Du Page Cty., Ill.*, 613 F.2d 675, 678 (7th Cir. 1980))).

[10] Because the Court has not found a plausibly asserted constitutional violation, it need not conduct a *Monell* liability analysis as to the City or a qualified immunity analysis as to Fulop.

[11] Defendants also challenge Plaintiffs' standing to bring the Section 1983 claims. JCRA Br. at 4-9; City Br. at 7-9; Fulop Br. at 6-7. The Court does not reach the issue because it is dismissing on other grounds. Nevertheless, the Courts notes (without deciding) that to the extent that Plaintiffs can plausibly plead that they were unlawfully retaliated against based on Jared Kushner's constitutionally protected activities, Third Circuit precedent appears to indicate that Plaintiffs do have standing. *See Montone v. City of Jersey City*, 709 F.3d 181, 196-99 (3d Cir. 2013).